GEORGE A. BENNETT, SHERIFF, v. C. A. WARNER.

FILED FEBRUARY 17, 1898. No. 7845.

Attachment: FRAUDULENT CONVEYANCES: EVIDENCE. Evidence examined, and *held* sufficient to entitle the defendant to have the case submitted to the jury on the theory that the sale in question was merely colorable and made to hinder or delay a creditor in the collection of his claim.

ERROR from the district court of Douglas county. Tried below before BLAIR, J. *Reversed.*

*W. S. Shoemaker,* for plaintiff in error.

*Horton & Blackburn, contra.*

SULLIVAN, J.

Under a peremptory direction of the trial court the jury in this case returned a verdict for Warner, who was plaintiff below. To secure a reversal of the judgment rendered on this verdict Bennett prosecutes error to this court. The facts are these: In 1893, and for several years before that time, H. G. Gwynne was engaged at Pocatello, Idaho, in buying hides and wool, which he shipped for sale to his uncle, D. H. McDaneld, who was engaged in the commission business in Chicago, Illinois. As a result of their dealings Gwynne became indebted to McDaneld in a sum claimed by the latter to be in the neighborhood of $4,000. A misunderstanding in regard to this indebtedness having arisen between the parties, their business relations were terminated some time prior to July, 1893. Some time in October of the same year Gwynne left Pocatello for Chicago, instructing his manager, McCarty, before starting, to call on Warner for any money he might need during his absence. Acting on his instructions, McCarty did soon after obtain from Warner $40 at one time and $50 at another time. A little later, on October 24, McCarty again applied to

Warner for an advancement.    Warner, however, refused
to further respond in the way of a loan, but proposed to
buy a car-load of hides if McCarty had authority to sell.
McCarty thought he possessed the necessary power to
make the sale and accordingly made it, taking in pay-
ment Warner's check for the price agreed upon, less the
$90 previously loaned.    The hides were then consigned
in Warner's name to John Miller & Co., a Chicago com-
mission firm.    While at Omaha, in transit, they were
seized by Bennett, sheriff of Douglas county, as the prop-
erty of Gwynne, under an order of attachment, in an ac-
tion commenced against him by D. H. McDaneld.    The
alleged wrongful seizure of this property is the basis of
the judgment of which the plaintiff in error complains.

Warner had been at one time in the employ of Gwynne
in the hide and wool business, but; having been admitted
to the bar in 1891, he then engaged, and has since con-
tinued, in the practice of his profession at Pocatello.
He was the friend and legal adviser of Gwynne.    He
knew the latter was indebted to McDaneld, and that, on
account of some misunderstanding in regard to that in-
debtedness, their business relations had been discon-
tinued.    He had talked with McDaneld about the mat-
ter and promised to use his good offices with Gwynne to
bring about an adjustment of the differences between
them.    He knew that in the previous July, McDaneld
had sued Gwynne and attached a car-load of hides
owned by him and then in transit from Pocatello to the
city of New York.    He knew that Gwynne was worth
about $20,000 and that McDaneld was his only creditor.
It does not appear that he had ever before advanced
Gwynne any money, or that he had bought any hides of
him or anybody else during the course of his professional
career.    Neither does it appear why Gwynne expected
Warner to act as his bank during his absence or why it
became necessary to resort to him for loans with which
to conduct his ordinary business transactions.    The
business of Gwynne was to buy hides at Pocatello and

sell them in the eastern markets, and it does not appear that either he or McCarty had ever before sold hides in the market where they were purchased. The defendant below tried the case on the theory that the sale to Warner was colorable merely and made to prevent an attachment of the hides by McDaneld in Chicago or while in transit to that city. This theory was not without evidential support and should have been given to the jury under proper instructions. In the light of the evidence detailed, it was for the jury to say whether the transaction in question was an honest or corrupt one. (*Connelly v. Edgerton*, 22 Neb. 82; *F.'tzgerald v. Meyer*, 25 Neb. 77; *Riley v. Melquist*, 23 Neb. 474; *Davis v. Scott*, 22 Neb. 154.) The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.